28 C.C.P.A. (Patents)

## In re ROSENBERGER.

### Patent Appeals No. 4207.

Court of Customs and Patent Appeals.

Jan. 6, 1941.

Rehearing Denied Feb. 24, 1941.

508

William F. Hall and Charles M. Thomas, both of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Having allowed two claims in appellant's application, which is owned by the Pangborn Corporation of Hagerstown, Maryland, the Primary Examiner of the United States Patent Office rejected claims 36, 37, 38, 39, 40, 41 and 42, from which decision appeal was taken to the Board of Appeals, whose decision affirmed that of the examiner. Upon appeal to this court, appellant moved to dismiss claims 36, 39, 40 and 41, which motion to dismiss is granted, thus leaving claims 37, 38 and 42 for consideration by us.

Claim 37 is regarded as typical of the three claims, although slight differences existing therein will be referred to hereinafter. Claim 37 reads: "37. In an abrading machine, a rotor having a plurality of substantially radially disposed blades, said blades terminating short of the axis of said rotor and having hardened surfaces extending substantially from end to end, a substantially cylindrical abrasive feeding device of small external diameter compared to the radius of the rotor disposed between the inner ends of said blades and having a discharge opening therein in the cylindrical wall of said device and located between the planes of rotation defined by the sides of said blades for delivering abrasive to the inner ends of said blades, the hardened surfaces of said blades terminating close to said feeding device to pick up the abrasive with a minimum impact and said surfaces of said blades being substantially smooth and uninterrupted to accelerate the abrasive smoothly and continuously and without abrupt changes in a substantial-

ly radial direction and being of sufficient length to discharge it from the outer ends of said blades at an abrading velocity when said rotor is rotated, said feeding device being mounted for movement so as to bring the discharge opening thereof into a plurality of positions to thereby selectively vary the discharge point of abrasive from said blades, means for delivering abrasive to said feeding device, and a rotatable means disposed in said feeding device for impelling abrasive through said discharge opening."

The references relied upon are: Nehr, 469,642, February 23, 1892; Beeg, 554,473, February 11, 1896; McPhee et al., 716,268, December 16, 1902; Young et al., 859,863, July 9, 1907; Weber et al., (Ger.) 512,269, November 8, 1930; Weber et al., (Ger.) 519,837, March 5, 1931; Peik, 1,953,566, April 3, 1934.

The invention relates to an improvement in an abrading apparatus of the kind which hurls granular abrading material against any body that is to be abraded or sand-blasted. It is used largely on the surface of steel plates. The device for the most part consists of a wheel frame upon which is mounted a number of throwing blades. On each of said blades is placed a removable wear shoe of a very hard substance to prevent the blade from quickly wearing away. The abrading material is fed into a centrally located receptacle and from there to a rotating paddle wheel upon which said blades are located. The blades, according to the involved claims, are spaced from each other at a substantial distance to permit an unobstructed, abrasive-admitting space, the outer ends of the blades being farther apart than the inner ends. There is a discharge opening properly located in the abrasive-admitting space so as to control the point of discharge of the abrading material. By so controlling it, the material is hurled against the work instead of being whirled in all directions from the rotating wheel.

According to appellant one of the important limitations in the claims at bar refers to the surface or impact portion of the blade. In claim 37 it reads: "said surfaces of said blades being substantially smooth and uninterrupted to accelerate the abrasive smoothly and continuously and without abrupt changes in a substantially radial direction" and in claims 38 and 42 the limitation reads: "said [blade] surfaces being substantially straight, smooth and

uninterrupted from the inner end to the outer end of said blades, to accelerate the abrasive smoothly and continuously and in a substantially rectilinear path with respect to said runnerhead." The affidavits submitted and the argument of counsel are to a large extent devoted to the importance of this limitation as contributing to making appellant's invention a success where others had failed. We think it proper, however, to call attention to the fact that in appellant's specification in the instant application he minimizes the importance of this limitation by the use of the following language: "It is to be understood that although I have illustrated blades 37 as having plane surfaces which are disposed substantially radially of the runner head, if desired they may be of curved configuration and be either forwardly or rearwardly inclined with respect to the direction of rotation of the runner head without departing from the spirit of my invention."

The claims require that the blades shall have a sufficient length to discharge the abrasive from the outer ends of the blades at an abrading velocity and also that the device shall have means for delivering abrasive to the feeding device, and a rotatable means in said feeding device for impelling abrasive through said discharge opening.

Claims calling for substantially the same invention as is involved in the claims at bar were brought forward by Rosenberger (appellant herein) and one Keefer (that application and the one herein having a common assignee, the aforesaid Pangborn Corporation) in an interference proceeding in the Patent Office. The Primary Examiner held that the claims were unpatentable to the said applicants and upon appeal to the Board of Appeals the decision of the Primary Examiner was affirmed. Thereafter in the instant application claims 36 and 37 and additional claims of somewhat similar scope, such as claims 38 and 42, were prosecuted in view of additional showing in the form of affidavits having been made.

Appellant contended there, as he contends here, that the said showing was sufficient to warrant a change of opinion as to the patentability of the said claims which had been passed upon by the board, as well as the additional claims then submitted. The affidavits are in the record. They are long and it would serve no useful purpose to quote extensively from them. Concerning them, we think it sufficient to say substan-

tially what the board said—that they are directed to a showing of the superiority of appellant's construction as compared to the construction of the Peik patent No. 1,953,566. The subject matter of the affidavits is to the effect that appellant's device is superior to that of Peik in that the direction of the discharge in appellant's device is definitely controlled, and that owing to the substantially straight blades of the kind called for by the claims, the material is discharged against the work with greater force and the life of the wear plates is greatly extended. It is furthermore set out that owing to the structure called for in the claims, especially that relating to the shape and position of the blades, a larger and more unobstructed abrasive-admitting space is obtained and that a much larger amount of abrasive material can be handled than in the structure defined by Peik. In Peik much of the energy in hurling the abrasive is absorbed by the impact against the plates. The affidavits also state that in testing the Peik wheel it was discovered that the material was discharged in all directions rather than under directional control.

We have carefully examined appellant's affidavits, but find nothing therein of controlling importance. If it be conceded that in this case it is shown that appellant's alleged invention defined by the appealed claims has all the merit he claims for it, it would not change the situation, because it seems to us that the issue is not an involved one and may be stated in the language of the Solicitor for the Patent Office as follows: "The issue in the present case would therefore appear to come down to whether there was invention to take a feeding device, such as shown for example, by Peik, or as used by the Board of Appeals, either one of the German patents, and use that feeding device with radially straight blades which were old in the art as shown by the several references referred to by the examiner."

It should be remembered that Peik is but one of the references, and just here we think it important to discuss the references and follow the discussion by stating the application which the examiner and the board made of them.

Nehr discloses an abrasive and blasting device for hurling abrasive by centrifugal force, which device has a wheel frame supporting radially extending throwing blades. Across the inner ends of said

blades is fed the abrasive by means of a conveyor screw. This device, however, does not contain any directional control means for controlling the direction of abrasive from the wheel.

Beeg discloses an abrasive machine for cleaning castings. It has a frame and radially extending blades, and the direction of discharge of the wheel is controlled by adjusting the place of admission of abrasive to the throwing blades.

McPhee discloses a device for throwing tailings, which device comprises a rotating wheel, a frame, and material-throwing blades containing removable hardened wear plates. He attempts to directionally control the emission from the wheel by positioning the material-feeding pipe so as to feed the material at a given point across the inner ends of the blades. It will be remembered here that appellant controls the direction of emission by the location of the slot which permits the abrading material to contact the blades at an alleged proper position.

The patent to Young et al. discloses an abrasive-throwing device or sand blasting machine, used by jewellers and others in treating small objects, which device comprises a rotating wheel, the wheel consisting of a frame and radially extending blades having thereon a wear covering of soft rubber. The abrasive is fed to the wheel in such a way as to discharge a major portion of the abrasive in a given location.

The patents to Weber et al. relate to devices for introducing sand into molds and which devices operate upon the principle of a rotating wheel containing blades throwing sand by centrifugal force. The blades extend in a generally radial direction and the direction of discharge from the device is controlled in part by a hollow cylindrical member positioned adjacent the center of the wheel. The sand is ejected from said control member.

The disclosure in the Peik patent differs considerably from that in the instant application. Peik has an abrasive-throwing wheel for hurling abrasive by means of forces developed in a rotating wheel, said wheel consisting of a framework with broad blades forming channels therein. The wheel has a device located therein for the purpose of controlling the direction of discharge of the abrasive from the wheel and also for controlling the amount of abrasive emitted from the wheel. The latter device consists of a conventional control cage and an impeller for forcing abrasive

out of said cage and onto the inner ends of the abrasive-throwing blades. His blades, however, are not substantially straight and do not have surfaces being substantially smooth and uninterrupted. On the contrary, the channel-forming surfaces of the blades of Peik describe continuous, uniform curves except at a point near the periphery of the wheel, where the channel makes an abrupt right-angle turn which extends forwardly and outwardly to the periphery of the wheel. It is at the point of the abrupt turn that the hardened wear plate is located. It is by reason of the aforesaid structure that appellant contends that Peik's device is inoperative in so far as the force of the wheel is lost by the abrupt change in the direction of the channel and that he loses control of the direction of the emission of the abrasive.

The examiner rejected the claims at bar as being met by the patent to Peik in view of the patent to McPhee and any one of the patents to Beeg, Nehr, Young et al. and Weber et al. He stated that it was his opinion that the use of Peik's directional control feeding means in wheels having straight blades, such as those shown in the patents to Beeg, Nehr, and Weber et al., was so certain to follow Peik's disclosure of the directional control feeding means that no invention could be involved in the expedient of using the two old features together as applicant has done. He points out that the expedient of making elements subject to abrasive action hard so as to present a proper wear-resisting surface, and making such surface removable, was so common that, in view of McPhee's patent, no invention could possibly rest in using the Peik wheel. He pointed out that in the Beeg and Nehr devices the blades were spaced further apart at their outer ends than at their inner ends, which showing met certain limitations in the claims.

The Board of Appeals, after examining the said affidavits filed by appellant, had this to say: "While the showing made may be sufficient to effectively dispose of the Peik patent when considered by itself, it is not at all conclusive as to the remaining art. Appellant is not the first to use a radially bladed impeller to which material is centrally supplied for abrading purposes. The patent to Nehr shows a rotary impeller to which abrasive is centrally fed having radial blades sufficiently spaced at their inner ends to provide for the feeding thereto of a large amount of abrasive material.

We see no reason for believing that a machine constructed in accordance with the Nehr disclosure would not be capable of handling as large an amount of material as appellant's machine. Nehr, however, has no means for controlling the point of feed so that his device is in no sense directional. The discharge would obviously take place substantially equally in all directions. However, despite the apparent shortcomings of Peik with respect to the efficient use of the abrasive material, we think it fairly suggests the idea of controlling the point of discharge by the use of a cylindrical slotted feeder at the center of the rotating blades."

The board concluded its decision affirming that of the examiner by using the following language: "In our opinion there would be no invention in using a feeder such as shown by the German patents with an impeller wheel such as shown by either Young et al. or Nehr."

It agreed with the examiner as to his reasons for holding that the special limitations which appellant has not emphasized here did not lend patentability to the claims.

■ Although much is said in appellant's brief with respect to the Rosenberger invention being a success, while the invention of Peik was an utter failure, and was inoperative, we think that the Peik patent was a proper reference to be used for the purpose for which it was used by the Patent Office tribunals. There was nothing inoperative in the Peik disclosure with reference to controlling the point of discharge by the use of a cylindrical slotted feeder at the center of the rotating blades. It was not held by the Patent Office that Peik anticipated the claims nor was it held that any single reference referred to was anticipatory thereof. On the contrary, it was the position of the board that it did not amount to invention to combine the controverted features of the prior art patents in the manner which the appellant has done.

■ There is no serious contention here (certainly none that is convincing) on the part of the appellant that the references do not disclose what the tribunals below have stated they disclose. Appellant argues, however, with great earnestness, that inasmuch as his device is a success as compared with the failure or near failure of the prior art devices, it should be held that invention was involved in the production of his device. So the old question recurs: May references be consolidated for the purpose of meeting a combination claim? This court and others have frequently held in cases quite similar to that at bar that such was a proper procedure. In re Thornbery et al., 103 F.2d 387, 26 C.C.P.A., Patents, 1160.

The question presented being one as to whether or not appellant's application discloses invention over the prior art, the appellant has called attention to the fact that under such circumstances it becomes a question of opinion and argues that the doubt should be resolved in favor of the applicant where he solves a problem which had long remained unsolved. Appellant cites cases where this rule has been applied, and unquestionably where doubt exists the force of the rule is controlling. We are called upon to determine whether the concurring tribunals below were in error in holding that it would not be inventive to combine the clearly disclosed prior art features in the manner in which appellant has done. We are constrained to hold, and do hold, that we have not been convinced that the Board of Appeals was in error in holding that to do what appellant has done did not involve invention.

■ Appellant argues that it is not proper to use an inoperative disclosure, such as he alleges that of Peik to be, in the manner in which the board has used it. We think the rule relating to inoperativeness in reference disclosures has no application in the instant controversy, because, as before stated, there is no claim of inoperativeness growing out of the clearly disclosed feature for which the Peik patent was used. It is well settled, however, that an anticipating device disclosed in a reference need not be perfect or commercially successful under all circumstances in order to constitute a valid anticipating reference. See In re Lawson, 36 F.2d 525, 17 C.C.P.A., Patents, 743, and cases cited. See also In re application Talley, 53 App.D.C. 99, 288 F. 453.

■ Appellant complains of the age of some of the references cited. Regardless of what has been said or may be said concerning the anticipatory force to be given to an old reference which is shown not to have solved an existing problem or not to have met with commercial success, it is clear to us that the mere fact alone that the reference is old does not prevent it from being properly used as a reference if the structure disclosed and relied upon is clearly and definitely shown.

As above indicated, we must hold and do hold that we find no error in the decision of the board affirming that of the examiner in rejecting the three claims at bar, and appellant's motion to dismiss as to claims 36, 39, 40 and 41 being granted, the decision of the board, affirming that of the examiner, rejecting claims 37, 38 and 42 is affirmed.

Affirmed.